IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 13, 2015

**STATE OF TENNESSEE v. BILLY S. WATSON**

**Appeal from the Criminal Court for McMinn County**
**No. 2014-CR-258     Sandra Donaghy, Judge**

_____

**No. E2015-00525-CCA-R3-CD – Filed January 5, 2016**

_____

The defendant, Billy S. Watson, appeals his McMinn County Criminal Court jury convictions of aggravated burglary, attempted theft, and vandalism, claiming that the evidence was insufficient to support his convictions. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Donald Leon Shahan, Jr., Assistant District Public Defender, for the appellant, Billy S. Watson.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Stephen Crump, District Attorney General; and Dorothy Cherry and Heather Higginbotham, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

In June 2014, the McMinn County Criminal Court grand jury charged the defendant with one count each of aggravated burglary, attempted theft of property valued at $1,000 or more but less than $10,000, and vandalism of property valued over $500 but less than $1,000, arising out of the burglary of Edgar Boudreu's residence. The trial court conducted a jury trial in November 2014.

The State's proof at trial established that, between 1:00 and 2:00 p.m. on April 23, 2014, Marty Dale Reed saw a man he did not recognize in the yard of his next door neighbor, Mr. Boudreu. Mr. Reed watched the man walk behind Mr. Boudreu's house, "scan[] around a little, went to the . . . side door, which is normal ingress and

egress for the house, and proceed[] to jimmy the door and break in." Mr. Reed immediately called 9-1-1 to report the suspected burglary in progress.

After contacting 9-1-1, Mr. Reed watched his neighbor's house to see if the burglar would reappear. When law enforcement officers arrived a short time later, Mr. Reed saw the burglar leap from a window in the rear of the house and start to flee, but the man was captured by police officers and taken into custody.

Officer Cody Manders with the Englewood Police Department ("EPD") and Deputy Larry Moses with the McMinn County Sheriff's Department both responded to a call of a possible burglary in progress at 221 South Amherst. Officer Manders noticed that the side door of the residence had been damaged and appeared to have been "forcibly opened." While Officer Manders was waiting outside Mr. Boudreu's side door, Deputy Moses arrived on the scene and saw the burglar jump through a window of the house and begin to run toward some nearby railroad tracks. Deputy Moses pursued the burglar and captured him. When the officers searched the suspect, Officer Manders found "some knives, some jewelry, a possible watch, and . . . some . . . medication bottles from the owner at the residence." After securing the suspect, Officer Manders went inside the residence and noticed that a gun cabinet was open and three guns were lying on a sofa "as if [the suspect] was getting ready to take the weapons." Both Officer Manders and Deputy Moses identified the defendant as the man who fled from Mr. Boudreu's residence.

EPD Chief Gary Miller testified that he, too, responded to the burglary call on April 23 and recognized the defendant after he was captured. Chief Miller noticed that the frame of Mr. Boudreu's side door had been damaged and that "around the door where the lock catches, the wood had been displaced there, broken, shredded, and the door just came open." Chief Miller testified that the blinds that had been covering the window through which the defendant had made his escape "had been torn from the window" and that the window was open. When Mr. Boudreu arrived at his residence, he examined the items found on the defendant's person and identified a set of car keys that had been left inside his home when he left earlier that day. Mr. Boudreu also identified prescription pill bottles and a pocket knife that belonged to him, and he told Chief Miller that the guns on the sofa were always kept inside his gun cabinet. Through the testimony of Chief Miller, the State introduced into evidence photographs of the damaged door frame, the window and blinds, the items found on the defendant's person, and the guns lying on the victim's sofa. The State also introduced into evidence a wood file found in Mr. Boudreu's residence that did not belong to the victim and which the victim believed was used to break into his home.

Mr. Boudreu testified that, on April 23, he left to go to work at 6:00 a.m. and typically returned home after 4:30 p.m. After learning that his residence had been burglarized, he returned home to find his residence in disarray: "dresser drawers were open, [his] kitchen cabinets was all open, bed turned over, file cabinet broken into, gun case broken into." Mr. Boudreu also observed that, in addition to the damage to his side door, the latch to his front door was broken as well. Mr. Boudreu stated that the damage to his residence exceeded his insurance deductible by $600. With respect to the items taken from his home, Mr. Boudreu identified "a couple of pocket knife sets" and a set of watches, as well as the keys to his shed, which had been locked in his filing cabinet when he left for work that morning. Mr. Boudreu stated that the value of the three guns left on his sofa was $800 but that he did not know the value of the other items taken from his home.

Mr. Boudreu testified that he was acquainted with the defendant because they both frequented the same "dance hall" establishment. Mr. Boudreu denied ever giving the defendant permission to enter his home or giving the defendant a set of keys to his residence.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant elected to testify and chose to present proof.

Both the defendant's niece and the defendant's father testified that the defendant and Mr. Boudreu were well-acquainted. The defendant testified that he and Mr. Boudreu had planned the burglary of Mr. Boudreu's residence so that both men could profit from the subsequent insurance claim. According to the defendant, Mr. Boudreu had provided him with keys to his residence, which the defendant used on April 23 to enter the house. The defendant removed guns from the gun cabinet and placed them on the sofa. He also put "pill bottles and stuff" in his pockets. When he saw Officer Manders arrive at the residence, he fled through the bedroom window. The defendant denied ever touching the front door of the residence, and he denied damaging the side door. He stated that Mr. Boudreu's "payment" to him for the staged burglary was to be the three guns he had removed from the gun cabinet.

Based on this evidence, the jury convicted the defendant as charged of aggravated burglary and vandalism of property valued over $500 but less than $1,000 and the amended charge of attempted theft of property valued over $500 but less than $1,000. Following a sentencing hearing, the trial court sentenced the defendant as a persistent offender to a term of 12 years' incarceration for the aggravated burglary conviction and as a career offender to a term of six years' incarceration for the vandalism conviction. With respect to the attempted theft conviction, the court sentenced the defendant to a

term of 11 months, 29 days and ordered all sentences to be served concurrently for a total effective sentence of 12 years.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal.  In this appeal, the defendant contends only that the evidence was insufficient to support his convictions.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).  This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact.  *Id.*  Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  *Id.*

As charged in this case, aggravated burglary is "burglary of a habitation," T.C.A. § 39-14-403(a), and "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony."  *Id.* § 39-14-402(a)(1).  "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."  *Id.* § 39-14-103.  "Criminal attempt" is defined as "acting with the kind of culpability otherwise required for the offense" and acting "with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense."  *Id.* § 39-12-101(a)(3).  "Vandalism" occurs when a person "knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent."  *Id.* § 39-14-408(a).  "Effective consent" is defined as "assent in fact, whether express or apparent, including assent by one legally authorized to act for another."  *Id.* § 39-11-106(a)(9).

In the instant case, the proof at trial established that the defendant entered Mr. Boudreu's residence without his consent with the intent to commit theft. The defendant used a wood file to disengage the lock on the side door, and this, coupled with other damage to the interior of Mr. Boudreu's home, resulted in damage in excess of $500. The defendant, by his own admission, intended to take three guns from Mr. Boudreu's house, and he had removed the guns from the gun cabinet and placed them on the sofa. Mr. Boudreu testified that the guns were valued at $800. Although the defendant testified that he had Mr. Boudreu's consent to enter the residence as part of their plan to commit insurance fraud, such matters of witness credibility and evidentiary weight are within the exclusive province of the trier of fact, and this court will not reweigh such evidence. *See Dorantes*, 331 S.W.3d at 379.

Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial overwhelmingly established the defendant's convictions of aggravated burglary, attempted theft of property valued over $500 but less than $1,000, and vandalism of property valued over $500 but less than $1,000.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE